UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  ASBESTOS PRODUCTS         LIABILITY LITIGATION (NO.VI)
                                                            Civil Action No.  MDL 875

                                                            EDPA Civil Action No. 2:07-cv-63839-ER
_____

**This Document Relates To:**
_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| **BARBARA ANNE ANDERSON,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-00068-HEH |
| | § | |
| **ALFA LAVAL, INC., et al.** | § | |
| Defendants. | § | |

REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED PLEADING

Plaintiff, by and through undersigned and pursuant to Rule 15 of the Federal Rules of Civil Procedure and Local Rule 7.1, hereby replies to the oppositions to Plaintiff's Motion for Leave to File an Amended Pleading filed by Defendants Bondex International Inc., RPM, Inc. and RPM International Inc. (collectively "Bondex") (Doc. 41) and Defendant Georgia-Pacific LLC's (f/k/a Georgia-Pacific Corporation) (Doc. 42), joined in by Defendant Union Carbide Corporation (Doc. 44), and states as follows:

**I. ARGUMENT**

In opposition to Plaintiff's motion for leave to amend her original state-court complaint, Defendants argue that Plaintiff's motion should be denied because of undue delay and futility.

The cases cited by Defendants are clearly distinguishable and Defendants have failed to show how they will be prejudiced or prevented from litigating the merits of this case by allowing such amendment. For these reasons, which are set forth more fully below, and for those contained in Plaintiff's motion, this Court should grant Plaintiff leave to amend the original complaint.

### A. Any Delay in Seeking Leave to Amend Was Not "Undue" Defendant and, In Any Event, Defendant Has Failed to Show How They Will Be Prejudiced by Allowing Plaintiff's Amendment.

Defendants assert that Plaintiff's motion for leave to amend should be denied because she has offered no reason for a delay in seeking leave to amend her original complaint. There are, however, a number of reasons why Plaintiff did not seek leave to amend sooner.

First, although Plaintiff's original state-court complaint was filed in October 2006, this case was essentially stayed from the time of its removal and subsequent transfer to this Court until the Order of Referral to Magistrate Judge for Settlement Conference (Doc. 4.) was entered in November 2008. Additionally, as was explained in Plaintiff's motion, Paragraph 10—the federal enclave disclaimer—was included in Plaintiff's original complaint in order to prevent the removal from state to federal court; however, this language proved to be meaningless when Defendants nevertheless removed this case to federal court on the basis that the office buildings where Plaintiff worked (and where her exposure to asbestos-containing joint compound products occurred) were located within federal enclaves.

Once this case became active again, the parties continued to proceed as if the federal enclave disclaimer had no meaning or effect, with Plaintiff pursuing, and Defendants defending, her claims of exposure asbestos-containing joint compound products in buildings that Defendants contend are located within federal enclaves. In light of Defendant's acquiescence, Plaintiff was led to believe that there was no longer a need to amend her complaint to remove the federal enclave disclaimer language until Defendants moved for summary judgment on the basis of this mere technicality. If this was a

misunderstanding on Plaintiff's counsels' part, it should not operate to foreclose her client's claims. See Arthur v. Maersk, Inc., 434 F.3d 196, 206 (3d Cir. 2006) (stating that Rule 15(a) "allows for misunderstanding and good-faith lapses in judgment, so long as the party thereafter acts reasonably and diligently") (citations omitted).

"There is, of course, no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue.'" Id. at 205. Thus, any delay in seeking leave to amend does not become "undue" simply by the passage of time. See, e.g., Tefft v. Sward, 689 F.2d 637, 639-41 (6th Cir. 1982 (allowing amendment after delay of four years), cited with approval in Arthur, supra, 434 F.3d at 205; Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694-95 (8th Cir. 1981) (delay of two and a half years), cited with approval in Arthur, supra, 434 F.3d at 205; Hirshhorn v. Mine Safety Appliances Co., 101 F. Supp. 549, 551, 555 (delay of seven years and nine months), aff'd, 193 F.2d 489 (3d Cir. 1952).

Even if the timing of Plaintiff's motion for leave to amend was marked by any "undue delay," Defendants have failed to show how they will be prejudiced by allowing Plaintiff to amend her original complaint. Although courts may look to equitable factors such as bad faith, undue delay and prejudice in considering whether to grant a motion for leave to amend, "[d]elay alone is not sufficient to justify denial of leave to amend." Arthur, supra, 434 F.3d at 204 (citing Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984)). Instead, as the Third Circuit has consistently recognized, "prejudice to the non-moving party is the touchstone for the denial of an amendment." Id. at 204 (quoting Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978))). Here, the only prejudice claimed by Defendants is that "allowing Plaintiff to amend moots Bondex's summary judgment motion based on waiver." See Defendant's Brief at 10. This, however, is not the type of "prejudice" warranting the denial of Plaintiff's motion.

In deciding whether the non-moving party will be prejudiced, the Third Circuit has considered "whether allowing an amendment would result in additional discovery, cost and preparation to defend new facts or new theories." Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F. 3d 267, 273 (3d Cir. 2001)

(citations omitted). In <u>Cureton</u>, the plaintiffs initially brought their suit of discrimination against the National Collegiate Athletic Association ("NCAA") alleging that the minimum standardized test score component of Proposition 16, an NCAA bylaw, had a disparate impact on African-American student-athletes. <u>See</u> <u>id.</u> at 270. After seeking leave once before to add two additional plaintiffs and following the Third Circuit's remand to the District Court reversing summary judgment, but directing the District Court to enter judgment for the NCAA, the plaintiffs sought leave to amend again; this time asserting that "Proposition 16 was adopted and used by the NCAA as an instrument of intentional discrimination against African-American student-athletes." <u>See</u> <u>id.</u> at 271-72. In affirming the District Court's denial of leave to amend, the Third Circuit concluded that the prejudice to the NCAA was significant. <u>See</u> <u>id.</u> at 275. The Court reasoned as follows:

> During the lengthy and comprehensive proceedings below, the NCAA had defended against a disparate impact challenge to Proposition 16 and had no notice that the question of discriminatory intent was at issue. This is not a case where the question of discriminatory intent permeated the plaintiffs' original claims. . . . Thus, if amendment were permitted, the NCAA would be prejudiced by having to engage in burdensome new discovery and significant new trial preparation.

<u>Id.</u> at 275-276.

In the instant case, Plaintiff does not seek to add new claims or theories that Defendants have not already defended throughout the course of this litigation. Plaintiff originally sued Defendants alleging negligence and breach of warranty in connection with asbestos and/or asbestos-containing products manufactured and/or supplied by Defendants. She does not now seek to add another cause of action, such as fraud or intentional infliction of emotional distress that may require Defendants to defend Plaintiff's claims in a different manner than they already have been. Defendants have failed to enunciate any new or further discovery that will be required if Plaintiff's motion is granted. Furthermore, Defendants have already "[a]dmittedly. . . taken actions to defend against the <u>possibility</u> that Plaintiff may be allowed by this Court to assert those claims." <u>See</u> Defendant's Brief at p. 5.

The other case cited by Defendants in support of their "undue delay" argument is also distinguishable from the instant case. In Arthur v. Maersk, Inc., supra, 434 F.3d 196, the plaintiff originally sued his employers, Maersk, Inc. and Dyn Marine Services of Virginia, Inc., for injuries he suffered while working as a merchant seaman aboard a number of ships owned by these two defendants. Throughout the course of discovery, however, the plaintiff learned that the ships were operated by the United States Navy and thereafter sought leave to amend his complaint to add the United States as an additional defendant to the matter. See id. at 199-201. Here, Plaintiff does not seek to amend her complaint to add new parties; rather, Plaintiff seeks to remove the federal disclaimer language and otherwise conform the pleadings to the evidence established against Defendants already named in Plaintiff's original complaint. See Fed. R. Civ. P.15.

**B. Plaintiff's Amended Complaint Relates Back to the Date of Her Original Complaint, and Thus, Granting Leave To Amend Will Not Be Futile.**

Defendants also argue that Plaintiff's motion for leave to file an amended pleading should be denied on the ground of futility because the proposed amendments cannot relate back to the date of Plaintiff's original complaint and, thus, are barred by Virginia's two-year statute of limitations for personal injury actions. Defendants are mistaken.

Rule 15(c) provides, in pertinent part, that an amendment to a pleading will relate back to the date of the original pleading when: "(A) the law that provides the applicable statute of limitations allows relation back," or (B) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P.15(c)(1). Thus, this Court may look to Virginia's relation back law, in addition to relation back under the Federal Rules, since Virginia law provides the applicable statute of limitations as Virginia is the state where Plaintiff's injuries occurred.

### 1. <u>Plaintiff's Claims Relate Back Under Virginia Law</u>

Under Virginia law, relation back to the original pleading will be permitted in the following circumstances:

> [s]ubject to any other applicable provisions of law, an amendment of a pleading changing or adding a claim or defense against a party relates back to the date of the original pleadings for purposes of the statute of limitations if the court finds (i) the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading, (ii) the amending party was reasonably diligent in asserting the amended claim or defense, and (iii) parties opposing the amendment will not be substantially prejudiced in litigating on the merits as a result of the timing of the amendment.

Va. Code Ann. §8.01-6.1.

Section (i) of the Virginia Statute mirrors the relation back language of Rule 15(c)(1)(B) regarding whether the amendments involve the same transaction, occurrence or conduct, and thus is not dispositive for the reasons set forth in Section I(B)(2), <u>infra</u>. The other two provisions of the Virginia statute are similar to the equitable considerations of undue delay and prejudice that may be weighed by this Court in determining whether leave should be granted under rule 15(a). Although the Third Circuit has stated that "[s]uch equitable considerations are relevant to whether leave to amend should be granted under Rule 15(a), but do not relate to any of the enumerated conditions of Rule 15(c)," <u>Arthur v. Maersk, Inc.</u>, <u>supra</u>, 434 F.3d at 203, the Virginia statute asks us to look at these very factors in determining whether Plaintiff's proposed amendments will relate back to her original complaint.

The term "reasonably diligent" has been defined as "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any particular standard, but depending on the relative facts of the special case." <u>Wallace v. Zoller</u>, 52 Va. Cir. 80, 2000 WL 33258765 at *5 (Va. Cir. Ct. May 7, 2000) (quoting Black's Law Dictionary 411

(rev. 5th ed. 1979)). As was set forth in Section I(A), <u>supra</u>, Plaintiff acted with reasonable diligence in seeking leave to amend given all of the facts and circumstances in this case. Moreover, Defendants have failed to show how they will be "substantially prejudiced in litigating the merits of this case." As previously stated, the only prejudice claimed by Defendants is that "allowing Plaintiff to amend moots Bondex's summary judgment motion based on waiver." <u>See</u> Defendant's Brief at 10. Such "prejudice," however, is based on a technicality and has nothing to do with litigating the merits of this case. The Virginia statute, on the other hand, "contemplates actual prejudice, like the loss of evidence, not the ordinary inconvenience and expense which is an incident to the defense of any claim. <u>Wallace</u>, <u>supra</u>, 52 Va. Cir. 80, 2000 WL 33258765 at *3. Defendants have made no such claim.

     Defendants' reliance on the elements of Virginia's relation back statute is also misplaced. In keeping with the liberal policy of granting leave to amend under the Federal Rules of Civil Procedure, the enactment of Rule 15(c)(1) was "intended to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law." <u>See</u> Fed. R. Civ. P. 15 advisory committee's note (1991 Amendment). The purpose of this rule is "to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense." <u>Id.</u> "Whatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." <u>Id.</u> In other words, Rule 15(c)(1)(A) was meant to enlarge, not restrict, the Court's authority to grant leave to amend where the applicable state law allows relation back. Thus, even if the Virginia statute would not permit relation back, Plaintiff's amended claims would not automatically be barred because this Court may also consider whether the amendments relate back under Rule 15(c)(1)(B).

Furthermore, the Virginia cases cited by Defendants only support the conclusion that Plaintiff's claims relate back to the date of her original complaint. In <u>New River Mineral Co. v. Painter</u>, 100 Va. 507, 42 S.E. 300, 301-02 (1902), the Virginia Supreme Court concluded that the plaintiff be permitted to amend his complaint where "[t]he injuries complained of in the original and in the amended declaration were the same. The form of action was not changed. The amendment only varied the mode of demanding the same thing; that is, damages done the same property by the same causes." In <u>Vines v. Branch</u>, 244 Va. 185, 418 S.E.2d 890 (1992), the Court used the same reasoning to conclude that an amended claim would not relate back to the original pleading:

> In the case before us, Vine's assertion of a breach of contract does more than merely "vary the mode of demanding the same thing." In the original motion for judgment, Vines sought money damages in the amount of $9,341.40 plus interest and punitive damages flowing from Branch's refusal to return the car after being requested to do so. In the contract action, however, Vines sought: (1) either the return of the car or money damages in the amount of $9,324.40 plus interest; and (2) an additional $10,000 in damages for loss of the use of the automobile.

<u>Id.</u> at 188.

Here, the injuries complained of and the damages sought in Plaintiff's original pleading are the exact same as those contained in her proposed amended pleading. <u>Compare</u> paragraph 36 of Plaintiff's original complaint <u>and</u> paragraph 36 Plaintiff's proposed Amended pleading. Thus, Plaintiff's amendment should not be considered a new cause of action, but rather, only the variation of the mode of demanding the same thing, which relates back to Plaintiff's original complaint. As noted by the Virginia Supreme Court in <u>Irvine v. Barrett</u>, 119 Va. 587, 89 S.E. 904 (1916), "[a]mendments which only amplify the statements or prayer in the original complaint are not deemed to introduce a new cause of action." <u>Id.</u> at 905 (citation omitted). <u>Accord</u> <u>Bensel v. Allied Pilots Ass'n</u>, 387 F.3d 298, 310 (3d Cir. 2004) (concluding that

"amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c)").

### 2. **Plaintiff's Claims Relate Back Under Federal Rule 15(c)(1)(B)**

Under Rule 15(c)(1)(B), a plaintiff's proposed amendments will relate back where they assert a claim that arose out of the same conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading. Fed. R. Civ. P.15(c)(1)(B). Although not expressly stated in the Rule, the critical element involved in a Rule 15(c) determination is notice. Williams v. U.S., 405 F.2d 234, 236 (5th Cir. 1968) (citations omitted). See also "The rationale behind Rule 15(c) is to allow an amendment where the defendant has been put on notice through the pleadings or from other sources, of the entire scope of the transaction or occurrence out of which the amended claims arise." Barcume v. City of Flint, 819 F. Supp. 631, 636 (E.D. Mich 1993) (citing Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1497 (1990)) (emphasis added). See, e.g., Bensel v. Allied Pilots Ass'n, supra, 387 F.3d at 310 (in determining whether there is a common core of operative facts in two pleadings, "the court looks to whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds"); Overfeld v. Pennroad Corporation, 39 F. Supp. 482, 485 (E.D. Pa. 1941) (concluding that "defendants' objection is a technical one which we do not think should prevail in view of the fact that they have had actual notice since 1932 of the rights and remedies sought by the [plaintiffs]"). Here, contrary to Defendants' assertion that "Plaintiff for the first time alleges that her mesothelioma was caused by occupational exposure as a bystander during her work as a civil servant in various federal buildings" in her proposed amended complaint, see Defendant's Brief at 8, Defendants received notice of these claims when Plaintiff served her

Answers to Interrogatories in December 2006 and again during Plaintiff's deposition, which took place in January 2007. See Plaintiff's Response to Defendant General Electric Company's First Interrogatories and Requests for Production of Documents, attached hereto as **Exhibit 1**, Answer to Interrogatory No. 4; Plaintiff's Amended Answer to Interrogatory No. 5 in Response to Defendant General Electric Company's First Interrogatories and Requests for Production of Documents, attached hereto as **Exhibit 2**.

It should also be noted that Virginia is a notice pleading state. Thus, "even a flawed complaint will survive demurrer if it is drafted so that the defendant is on notice of the nature and character of the claim." Lodal v. Verizon Virginia, Inc., 74 Va. Cir. 110, 2007 WL 5984179, *1 (Va. Cir. Ct. 2007) (citing Catercorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 24, 431 S.E.2d 277, 278 (1993)). Defendants in this case were clearly put on notice of the nature and character of Plaintiff's claims—negligence and breach of warranty stemming from Plaintiff's exposure to asbestos and asbestos-containing products—at the time Defendants' were served with Plaintiff's original state-court complaint. Although Defendants point to Plaintiff's claims of household exposure with respect to naval equipment manufacturers, Defendants surely had personal knowledge that they were the manufacturers and suppliers of asbestos-containing joint compound products or, in the case of Union Carbide Corporation, the supplier of asbestos fibers to manufacturers of asbestos-containing joint compound products, and that these were the reasons for being named in Plaintiff's original complaint.

## II. CONCLUSION

WHEREFORE, based on the foregoing reasons, and those set forth in Plaintiff's Motion and supporting Memorandum of Law, Plaintiff respectfully requests that this Honorable Court

GRANT her Motion for Leave to File an Amended Pleading and APPROVE the proposed Order attached to Plaintiff's Motion (Doc. 33-5).

Respectfully submitted,

**WATERS & KRAUS, LLP**

*/s/Melanie J. Garner*
Melanie J. Garner
MD Fed. Bar No.: 28120
315 N. Charles Street
Baltimore, Maryland 21201
(410) 528-1153 (telephone)
(410) 528-1006 (facsimile)

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I, undersigned counsel for Plaintiff, hereby certify that on this 6th day of July, 2009, I caused a copy of the foregoing document, and any related attachments, to be served on all remaining counsel of record via Electronic Case Filing procedures.

*/s/ Melanie J. Garner*
Melanie J. Garner
