IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | |
| LIABILITY LITIGATION (No. VI) | : | |
| _____ | X | |
| This Document Relates To | : | |
| | : | |
| BARBARA ANNE ANDERSON | : | |
| | : | CIVIL ACTION NO. MDL 875 |
| Plaintiff, | : | |
| v. | : | EDPA CIVIL ACTION NO. 07-cv-63839 |
| | : | |
| ALFA LAVAL, INC., et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| (E.D. Va. # 3:07-cv-00068) | : | |

MEMORANDUM OPINION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                               July       10, 2009

I.      **Introduction**

Presently before the Court are the motions *in limine* "Based Upon the Virginia Statute of

Repose" filed by Defendants Bondex International, Inc., RPM Inc. and RPM International (Docs.

25-26) and Georgia-Pacific Corporation (Doc. 28), on May 21, 2009, both adopted on that same date

by Defendant Union Carbide Corporation (Doc. 21) (collectively, "Defendants").  Plaintiff Barbara

Anne Anderson (alternatively "Plaintiff" or "Anderson") filed a timely response on June 10, 2009

(Doc. 32).  Oral argument was heard upon the motions on June 16, 2009.  The motions assert that

Plaintiff's claims of exposure to asbestos during the construction of drywall partitions at various

federal installations at which she worked from 1962 to 1985 are barred by the Virginia statute of

repose, Va. Code Ann. § 8.01-250.  Defendants seek the entry of an Order precluding any evidence

of such exposures.[1]  For the reasons set out below, we enter an Order denying the motions.

## II.   Factual Background[2]

Plaintiff generally alleges that she contracted "pleural mesothelioma" as a result of exposures to, among other things, chrysotile-containing joint compound.  The exposures occurred in two specific phases.  The first phase was household exposure as a child, when her father worked as an insulator in the Norfolk Naval Shipyard in Portsmouth, VA, and resulted from her occasional laundering of his work clothes.  The second phase, pertinent to this motion, took place when she worked in a white-collar office position at Navy-operated office buildings.  Those exposures were to dust from joint compound during the construction of drywall partitions and other projects, in the buildings where she worked for the 23 years between 1962 and 1985.  Plaintiff has apparently testified at deposition to a recollection of dust having been created from the "mixing" of the joint compound, the "sanding" of the compound after it had been applied to the partition walls and had dried, and the cleanup of the dust created by the sanding.  She likewise testified to a recollection of products manufactured by Defendants having been at the various sites.  It is this second phase of her exposure that is the subject of this motion.

---

[1] Subject matter in this case is predicated upon a federal question under 28 U.S.C. § 1441(b).  In that the case was removed as a cause of action occurring on a "federal enclave," a federal court must apply the substantive laws of the state in which the federal enclave is located. *See* 16 U.S.C. § 457.  Moreover, in a Multidistrict Litigation, "as to matters of state law, the Court is bound to apply the state law of the transferor forum."  *Hildebrandt v. Indianapolis Life Ins. Co.*, 3:08-CV-1815-B, 2009 U.S. Dist. LEXIS 27753, *8-9 (N.D. TX. Mar. 31, 2009).  Virginia law applies under either scenario.  Accordingly, we apply Virginia law in deciding all substantive legal issues pertaining to this case.

[2] The factual background is derived from the parties' recitations of the facts, which substantially mirror each others' and do not differ in any meaningful way that we are able to discern.  (*See* Doc. 28 at 2-3; Doc. 32 at 2-5).

### III.    Procedural Background

This case was initially filed in the Richmond Circuit Court on October 26, 2006, and was

then removed to the United States District Court for the Eastern District of Virginia.  It was

transferred to this Court on April 23, 2007 as part of Multidistrict Litigation Docket 875.  (Doc. 1).

By amended Order of Referral dated June 17, 2009, the Honorable Eduardo C. Robreno, to whom

MDL 875 is assigned, this case was referred to us "for final disposition of all pretrial matters not

dispositive of a party's claim or defense pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P.

72(a)."  (Doc. 40).

### IV.    Discussion

#### A.    Va. Code Ann. § 8.01-250 and Applicable Interpretive Caselaw

By their motions, Defendants assert that Plaintiff's claims relating to the second phase of

exposure to Defendants' products should be excluded by the Virginia statute of repose, Va. Code

Ann. § 8.01-250.  (Doc. 28 at 9).[3]  Plaintiff, on the other hand, asserts that the exposures, resulting

specifically from the sanding and cleanup came before the point in time when the joint compound

was "incorporated" into the improvement and are therefore not barred by the statute of repose.  (*See*

Doc. 32-2 at 5).

The statute provides, in pertinent part:

> No action to recover for any injury to property, real or personal, or for
> bodily injury or wrongful death, arising out of the defective and
> unsafe condition of an improvement to real property . . . shall be
> brought against any person performing or furnishing the design,
> planning, supervision of construction, or construction of such
> improvement to real property more than five years after the

---

[3] Unless otherwise specified, and for the sake of reference, when citing to Defendants'
motions we will cite only to the motion filed by Georgia-Pacific.

performance or furnishing of such services and construction.

Va. Code Ann. § 8.01-250.[4]  The parties agree that Anderson's claim is an "action to recover . . . for bodily injury . . . arising out of the defective and unsafe condition of an improvement to real property."

Additionally, the Supreme Court of Virginia has made clear that the statute includes within its ambit protection for "manufacturers and suppliers of ordinary building materials *incorporated into* improvements to real property."  *Cape Henry Towers, Inc. v. National Gypsum Co.*, 331 S.E.2d 476, 479 (Va. 1985) (emphasis added).  The question before us then, as the parties agree (*see* Doc. 28 at 6-7; Doc. 32-2 at 5), is whether the joint compound, an ordinary building material, had been "*incorporated into* [the] improvement[] to real property," at the time that the alleged exposure occurred.  *Cape Henry*, 331 S.E.2d at 479 (emphasis added).  If it had, the statute of repose bars any claim for recovery upon such exposure.  (*See* Doc. 28 at 6-7; Doc. 32-2 at 5).  If it had not, the statute would not apply.

The difficulty presented by this case, not previously addressed by the Virginia Supreme Court, concerns the issue of whether the incorporation of the joint compound is a process that properly involves more than simply smearing the mud-like product resulting from the mixing process onto the wall.  Because the result of that initial application will be sanded after it dries, and in certain instances applied and sanded a second and even a third time, the more difficult question of

---

[4] The parties agree that the statute of repose was initially enacted in 1964 as Va. Code Ann. § 8-24.2, and was amended in 1968, 1973 and again in 1977 to its current form.  *See Cape Henry*, 331 S.E. 2d at 478.  The portions of the statute pertinent to the case before us, however, remained the same.  As such, the parties agree that it is not necessary to distinguish between the different versions in order to determine which version would otherwise apply to the various exposures at issue.

determining whether this initial application constitutes incorporation must be determined.

Defendants assert that the compound is "incorporated" for the purposes of the statute once it has

been applied, while Plaintiff asserts that the compound cannot be deemed "incorporated" until the

specific installation process has been completed.  For the reasons discussed within, we agree with

Plaintiff.

> **B.     Point of Incorporation**

In deciding this matter of Virginia substantive law, we are bound by the decisions of the

Virginia Supreme Court.  *See Adams v. Madison Realty & Dev., Inc.*, 853 F.2d 163, 168 (3d Cir.

1995).  We thus begin our analysis by noting the absence of caselaw from that court directly on this

point.   While the court has on several occasions decided *whether* certain materials constitute

"ordinary building materials" under the statute, *see Cape Henry*, 331 S.E.2d 476; *Grice v.*

*Hungerford Mechanical Corp.*, 374 S.E.2d 17 (Va. 1988); *Luebbers v. Fort Wayne Plastics*, 498

S.E.2d 911 (Va. 1998); *Baker v. Poolservice Co.*, 636 S.E.2d 360 (Va. 2006), the parties do not cite,

and we have not found, any case expressly deciding the issue of precisely *when* a material which in

fact constitutes an ordinary building material is deemed "incorporated into" the improvement for

purposes of the statute.

We do note, however, that a panel of the Fourth Circuit touched upon this issue more

expressly in *Willis v. Raymark Industries, Inc.*, 905 F.2d 793 (4th Cir. 1990).  In *Willis*, the court

rejected the defendant manufacturer's argument that "any cause of action by the [plaintiff] workers

based on exposure during the installation of the insulation was extinguished" by the statute of repose.

*Id.* at 797.  The toxic exposures complained of there, which, the court explained, occurred "during

the installation" of the improvement to real property, "occurred prior to the point at which the

insulation products were incorporated into the realty." *Id.* at 797-98.  The court concluded that "[t]he fact that the insulation was destined for such use when it was manufactured [did] not in and of itself activate the statute." *Id.* at 797-98.  As such, the court held that the district court properly refused to dismiss the plaintiffs' cause of action based upon those exposures. *Id.*

Plaintiff asserts that *Willis* supports its position that "where the injury occurs during the installation of a product, such product is not considered 'incorporated' into the improvement, and such injury is therefore not subject to the Statute of Repose."  (Doc. 32-2 at 6-7).  Importantly, Defendants similarly concede that *Willis* "supports the proposition that as long as the injury occurs at any time *after* the product is installed and actually incorporated in the real estate[,] the statute of repose applies."  (Doc. 28 at 10) (emphasis in original).  We agree with the parties' interpretation of *Willis*, and specifically with the notion that the court drew the incorporation line at the point of installation.

Defendants nonetheless, in support of their position (that application is the relevant point of incorporation), rely upon Virginia state circuit court decisions in the cases of *William Ring v. Alfa Laval, Inc.*, Case No. CL07-2752 (2008) and *Oliver J. Tate v. Alfa Laval, Inc., et al.*, CL07-0207 (2009).  (Doc. 28 at 7-9; Doc. 26 at 8-9).  In those decisions, (both attached as Exs. 5 & 6, respectively, to Doc. 28), the trial courts sustained the defendants' similar motions to exclude evidence of exposures which occurred during the sanding phase of the joint compound installation. We have been provided with transcripts from the oral arguments heard upon those motions.  (Doc. 28 at 7-9).  A review of those transcripts makes clear that those judges considered essentially the same arguments presented to us.  Defendants point out that, while not binding upon us, *see Adams*, 853 F.2d at 168, the state circuit court decisions are "[o]ne way of determining" how the Virginia

Supreme Court would rule upon this issue that it has otherwise not been presented with.  (Doc. 28

at 10 (citing *Kollsman, Div. of Sequa Corp. v. Cubic Corp.*, 800 F. Supp. 1381, 1382 (E.D. Va.

1992)).  We certainly accept that proposition but note that these decisions are not supported by

written opinions and do not offer any particular rationale for the outcomes reached.

Further, we are unable to accept their interpretation of the specific language of *Cape Henry*,

which refers to products "incorporated into an improvement to real property."  We believe that the

most logical reading of this language contemplates a completed installation process.  This belief is

underlined by the Virginia Supreme Court's subsequent decisions applying *Cape Henry*.  In those

cases, while the court determined whether certain materials constituted "ordinary building materials"

protected by the statute, the court interchangeably described and made reference to those materials

as having not simply been "incorporated into" the improvement, but as having been "installed in"

that improvement, and used that date as the pertinent trigger date of the statute of repose.  *See Baker*,

636 S.E.2d at 363 n. 2, 368 (concluding that the spa drain cover at issue had been "mass-produced

. . . for installation into swimming pools and spas," had been "installed in the spa on or prior to

1991," in turn had been "incorporated into the spa as an improvement to real estate," and was thus

protected under the statute of repose); *Luebbers*, 498 S.E.2d at 912-13 (noting that "the steel panels,

braces, and vinyl liners manufactured by [the defendant]" had been "incorporated into the finished

swimming pool" and holding that because those materials had been "*installed in* an improvement

to real property more than five years before the plaintiff filed suit . . ., these defendants [were]

entitled to the protection of this statute [of repose]") (emphasis added); *Grice*, 374 S.E.2d at 18-19

(holding that plaintiff's claim, brought in 1986, was time-barred by statute of repose in that the

defendant "had completed the assembly and installation of the [electrical panel box at issue and its

components, which the court ruled, was an ordinary building material protected by the statute] as part

of the electrical system in 1979."). We presume that the court's reference in these cases to the

completed installation process as the pertinent trigger point for the statute of repose was neither stray

nor casual. On the other hand, we note that none of these decisions make reference to the date on

which any of these materials were merely first attached or applied, let alone use any such date as the

trigger for the statute. We do not presume this silence to be meaningless. We cannot ignore the

language in these cases in which the Virginia Supreme Court references incorporation as something

that has been completed.

We believe, further, that our interpretation of the pertinent "incorporation" language from

the Virginia Supreme Court's caselaw is supported by the Fourth Circuit's language in *Willis*. As

set out above, we accept Plaintiff's citation to *Willis*, which Defendants agree suggests that only

injuries which occur "after the product is installed and actually incorporated into the real estate" are

barred by the statute of repose (Doc. 28 at 10). We are satisfied that, consistent with our

interpretation, the *Willis* court similarly focused upon the completion of any installation process in

concluding that the statute of repose would not protect a defendant from a cause of action for

harmful exposure which occurred "during the installation" and thus "prior to the point at which the

[defendant's] insulation products were incorporated into the realty." 905 F.2d at 797-98.

We also take note that a reference to the dictionary definition of "incorporate" or

"incorporation" would similarly indicate the completion of a process. As Plaintiff pointed out during

oral argument (*see* N.T. 6/16/09 at 37), *Meriam-Webster's Collegiate Dictionary* defines

"incorporate" as "to unite or work into something already existent so as to form an indistinguishable

whole" and as "to blend or combine thoroughly." *Merriam-Webster's Collegiate Dictionary*, 631

(11th ed. 2003). We likewise accept Plaintiff's argument that the application of the joint compound was neither "unite[d] or work[ed] into" the "already existing" real property "so as to form an indistinguishable whole" nor "blend[ed] or combine[d] thoroughly" such as to have been "incorporated into" the remainder of the real property "until that installation process [was] complete." (N.T. 6/16/09 at 37, 34).

While we appreciate Defendants' concerns, as well as the potential difficulties inherent in attempting to determine when an installation project has in fact been completed, we are nonetheless persuaded that Plaintiff's proffered point of incorporation is the proper one. With this we conclude that an ordinary building material, such as the joint compound involved here, is incorporated into the greater improvement only when the installation of that material is complete.[5]

C.      **Exposure to Dust During the Sanding and Cleanup Phases Is Not Barred by Va. Code Ann. § 8.01-250**

Given our conclusion that completion of the joint compound's installation is the point of incorporation for purposes of the statute of repose, we are only left to determine whether Plaintiff's alleged exposures occurred during the joint compound installation process (and thus prior to the

---

[5] We stress, as Plaintiff's counsel did at oral argument, that the installation analysis is material-specific. (N.T. 6/16/09 at 40 ("It's not incorporated until . . . the installation process, specific to that part of the construction process is completed.")). In other words, a material is incorporated after installation of that material *itself* has been completed, not after the completion of installation of the greater improvement.

We concede that application of this standard may, as Defendants argued, result in scenarios where the time at which the statute is triggered differs based upon the skill of the installer. (*See* N.T. 6/16/09 at 24). In other words, we concede that in some circumstances, one installer of joint compound may possess the skill to complete the project after only one round of product application and sanding while another installer may require the several rounds called for in the instructions. We do not believe, however, that the potential disparity in either the duration of the installation or the skill with which it is completed impact upon our conclusion that the joint compound does not "form an indistinguishable whole" with the existing structure until completion of that installation.

point of incorporation). The parties agree that the alleged exposures to asbestos dust at issue before us occurred during three discrete phases of the installation of the joint compound to the property improvement: (1) the "mixing" of the joint compound with water, (2) the "sanding" of the joint compound after it had been applied to the improvement and had dried, and (3) the "sweep up" and "clean-up" of the dust and residue which resulted from the sanding phase. (*See* Doc. 28 at 3, 7; Doc. 32-2 at 3-4). Defendants, stipulating that their motion "does not relate to the mixing of joint compound before it is applied to the drywall," have confined their motion to the latter two phases. (Doc. 28 at 3). We are thus only left to determine whether the sanding and cleanup phases constitute part of the installation process.

In this determination, we are guided by Defendant's own product installation materials (attached as Exhibits 6 and 7 to Plaintiff's response to the motions), which demonstrate that the post-application sanding was, in fact, part of the normal installation process. Those materials call for (1) initial application of the joint compound, (2) "shear[ing] off" of "the excess" compound, (3) allowance of time for "the application to dry thoroughly," (4) "shear[ing] off" of the "surplus," (5) re-application of the joint compound, (6) "shear[ing] off" of "the excess" compound, (7) allowance of time for the "joints to dry," and (8) "[f]or best results," a third application of the compound. (*See, e.g.,* Doc. 32, Ex. 7 at pp. SGP 0023516-20). The subsequent cleanup, while not specified in these instructions, is implicit.

These materials satisfy us that both the sanding of the joint compound and the ensuing cleanup, although occurring after the application of the joint compound, occurred during the joint compound's normal installation process, and thus prior to the point of incorporation. As such, the evidence of Plaintiff's alleged exposures which occurred during those phases of the installation

process is not barred by the statute of repose.

Defendants' motions are **DENIED**.

An appropriate Order follows.


BY THE COURT:


 /s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE