IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS                  :
LIABILITY LITIGATION (No. VI)             :
_____ X
This Document Relates To                  :
                                          :
BARBARA ANNE ANDERSON                     :
                                          :     CIVIL ACTION NO. MDL 875
            Plaintiff,                    :
      v.                                  :     EDPA CIVIL ACTION NO. 07-cv-63839
                                          :
ALFA LAVAL, INC., et al.                  :
                                          :
            Defendants.                   :
                                          :
(E.D. Va. # 3:07-cv-00068)                :

## <u>MEMORANDUM OPINION</u>

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                          August      5, 2009

## I.      Introduction

Presently before the Court is the "Motion for Leave to File Amended Pleading" filed by Plaintiff Barbara Anne Anderson (alternatively "Plaintiff" or "Anderson") on June 10, 2009 (Doc. 33), the timely responses filed by Defendants Bondex International, Inc., RPM Inc. and RPM International ("Bondex") (Doc. 41) and by Georgia-Pacific Corporation (Doc. 42), both filed on June 24, 2009, the "Notice of Adoption" of Bondex's response filed by Defendant Union Carbide Corporation on June 25, 2009 (Doc. 44) (collectively, "Defendants"), and Plaintiff's reply filed on July 6, 2009 (Doc. 46). Oral argument was heard upon the motion on July 16, 2009. The motion seeks leave to amend the initial complaint (the "Initial Complaint"), which was filed in Virginia state court on October 26, 2006. Defendants assert that the proposed amendment should not be permitted given asserted undue delay in its filing, and would be legally futile in any event. For the reasons set

out below, we enter an Order denying the motion.[1]

## II.   **Factual Background**[2]

Plaintiff generally alleges that she contracted "pleural mesothelioma" as a result of exposure to asbestos.  The exposure occurred in two specific phases.  In her Initial Complaint, she alleged exposure resulting from her inhalation of "asbestos dust and fibers from [the] asbestos-laden work clothes" brought into the family home by her father who had worked as a "pipe cover insulator" with "asbestos-containing products and/or machinery" during his employment at Portsmouth Naval Shipyard, Portsmouth, Virginia.  (Initial Complaint at ¶¶ 1 & 7).[3]  This first phase of household exposure occurred between 1947 and 1956 when Anderson was a child.

The second phase of exposure, as set out in the proposed amended complaint (the "Amended Complaint"),[4] occurred when Anderson worked in an office position at various military and government buildings.  She has alleged that that exposure was due to her inhalation of dust from

---

[1] Subject matter in this case is predicated upon a federal question under 28 U.S.C. § 1441(b).  In that the case was removed as a cause of action occurring on a "federal enclave," a federal court must apply the substantive laws of the state in which the federal enclave is located.  *See* 16 U.S.C. § 457.  On the other hand, to the extent that we address any federal law issues, we note that in a Multidistrict Litigation, "it is the law of the transferee court that governs," *Hildebrandt v. Indianapolis Life Ins. Co.*, 3:08-CV-1815-B, 2009 U.S. Dist. LEXIS 27753, *9 (N.D. Tex. Mar. 31, 2009), and thus apply the law of our circuit.

[2] The factual background is derived from the face of the complaints and from our own recitation of the facts, previously set out in or our Memorandum Opinion of July 10, 2009.  (Doc. 48 at 2).

[3] A copy of the Initial Complaint is not contained in the Eastern District of Pennsylvania docket.  The Initial Complaint, rather, is part of the Virginia state court docket, CL-6-6790-3.  We obtained a copy of this complaint via email from Plaintiff's counsel, and assume that Defendants are familiar with it.

[4] A copy of the Amended Complaint is attached as Exhibit 2 to Plaintiff's motion.

asbestos-containing joint compound used during the construction of drywall partitions and other

projects, in the buildings where she worked for the 23 years between 1962 and 1985.

## III.    Procedural Background

This case was initially filed in the Richmond Circuit Court on October 26, 2006, and was

then removed to the United States District Court for the Eastern District of Virginia.   It was

transferred to this Court on April 23, 2007 as part of multidistrict litigation docket 875.   (Doc. 1).

Although Plaintiff had filed a "Motion for Remand" on March 2, 2007 along with a "Memorandum

in Support of Her Motion for Remand,"[5] that motion was "deemed denied without prejudice" by

Administrative Order No. 12, and was not renewed.   (Doc. 2 at 3 (emphasis omitted)).   By amended

Order of Referral dated June 17, 2009 and issued by Judge Robreno, this case was referred to us "for

final disposition of all pretrial matters not dispositive of a party's claim or defense pursuant to 28

U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a)."   (Doc. 40).   Plaintiff filed the "Motion for Leave to

File Amended Pleading" presently before us on June 10, 2009 (Doc. 33).   With responses and a reply

in hand, and having heard oral argument, it is now ready for determination.

## IV.    Discussion

### A.    Legal Standards

Amended pleadings are governed by Fed.R.Civ.P. 15.   Under Fed.R.Civ.P. 15(a)(1), a party

may amend its pleading once as a matter of course prior to being served with a responsive pleading.

Where a responsive pleading has been filed, "a party may amend its pleading only with the opposing

---

[5] The Motion for Remand and memorandum in support are not a part of this district's docket sheet in that they were filed before transfer of this matter into MDL 875.   They can be located on the docket of the United States District Court for the Eastern District of Virginia, CASE NO. 3:07-cv-00068-HEH.

3

party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2).  A court reviewing a motion for leave is to "freely give leave when justice so requires."  *Id.*

Nonetheless, a court is not required to grant leave to amend in every instance where leave is sought.  The decision to grant or deny a proposed amendment is, rather, "within the discretion of the District Court."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Supreme Court has specified that in determining whether "justice so requires," a district court should weigh various factors such as "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." before denying a litigant leave to amend.  *Id.*

### B.    Undue Delay

Defendants have asserted that leave should not be granted because of both undue delay and futility.  We are not troubled by the question of undue delay.  Delay, by itself, is not sufficient to support a denial of leave to amend.  *See Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001).  It, rather, must become "undue," such that it would place "an unwarranted burden on the court, or [would] become 'prejudicial,' placing an unfair burden on the opposing party."  *Id.* (quoting *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir.1984)).  Such is clearly not the case here.

Defendants have failed to demonstrate any legally sufficient burden that they would bear if Plaintiff were allowed leave to amend.  Bearing in mind the liberal nature of Fed.R.Civ.P. 15, *see, e.g., Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990), we are unable to see how allowing Plaintiff to amend would either place "an unwarranted burden on the court" or "an unfair burden" upon Defendants.  *Cureton*, 252 F.3d at 273.  The delay here does not support a denial of Plaintiff's motion.

### C.      Futility

Defendants more convincingly assert that to grant the motion would be futile based upon their belief that the claims raised in the Amended Complaint would be barred by the Virginia statutes of limitations.  We accept that the district court need not provide a litigant leave to amend where it would be futile to do so.  *See, e.g., Cowell v. Palmer Twp.*, 263 F.3d 286, 296 (3d Cir. 2001).  In determining whether a proposed amendment is or may be "futile," the Third Circuit has specified that "[f]utility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted).  In other words, when "assessing futility, the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*  Importantly for our purposes, an amendment is futile under this standard where the claim or claims asserted in the amended pleading would be time-barred by the applicable statute of limitations.  *See, e.g., Cowell*, 263 F.3d at 296.

The parties agree that under the pertinent provisions of Virginia law, Va. Code Ann. §§ 8.01-243 (A) and 8.01-249 (4), a two year limitation period applies to Plaintiff's injury claims.  According to both complaints before us, Plaintiff was diagnosed with mesothelioma on August 16, 2006. (Initial Complaint at ¶ 2; Amended Complaint at ¶ 2).  The parties agreed at oral argument that the claims asserted in the Amended Complaint would be time-barred unless they could be said to relate back to the Initial Complaint.  (*See* N.T. 7/16/09 at 14 ("[W]e [Plaintiff] would only lose if the complaint were not deemed to relate back"), 29). On the other hand, the claims would not be time-barred if they did relate back to the claims asserted in the Initial Complaint.  We first address the standards pertaining to relation back, and then proceed to apply those standards to the case before us.

1.      **Relation Back in General**

Relation back is governed by Fed.R.Civ.P. 15(c) which provides, in full:

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

*Id.* Our focus here is upon Fed.R.Civ.P. 15(c)(1)(B).[6]

Our Supreme Court has made clear that "new ground[s] for relief supported by facts that differ in both time and type from those the original pleading set forth" raised within an amended pleading do not relate back to the original pleading for purposes of the applicable statute of

------

[6] Appropriately, neither party asserts that Fed.R.Civ.P. 15(c)(1)(C) has any applicability to the matter before us. While the parties address Fed.R.Civ.P. 15(c)(1)(A), which provides for relation back when "the law that provides the applicable statute of limitations allows relation back," it is the case that the pertinent Virginia law governing relation back, Va. Code § 8.01-6.1, does not differ in a significant way from Fed.R.Civ.P. 15, aside from expressly calling for consideration of the amending party's diligence and the potential prejudice to the opposing party. In any event, the parties agreed at oral argument that Fed.R.Civ.P. 15(c) gives the moving party the benefit of whichever standard of relation back is more lenient. (N.T. 7/16/09 at 38-39). They likewise agreed that the more lenient standard here is provided in Fed.R.Civ.P. 15(c)(1)(B). (N.T. 7/16/09 at 38-39). Further, Plaintiff has not suggested, nor do we observe, that there is anything within the applicable Virginia statutes of limitations, Va. Code Ann. §§ 8.01-243 (A) and 8.01-249 (4), that gives support to their position. As such, we confine our discussion here to Fed.R.Civ.P. 15(c)(1)(B) and any applicable caselaw.

limitations.  *Mayle v. Felix*, 545 U.S. 644, 650 (2005).[7]   This standard requires the district court to search for a "common core of operative facts" between the two pleadings.  *Id.* at 664; *see also Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004).  On the other hand, "amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c)."  *Id.*

Importantly, "[l]eave to amend under [Fed.R.Civ.P. 15] subsection (a) and relation back under subsection (c), while obviously related, are conceptually distinct." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202-03 (3d Cir. 2006).  Accordingly, while "equitable considerations," such as prejudice or undue delay, might be relevant to an analysis of whether a party should be allowed to amend under Fed.R.Civ.P. 15(a), "there is no allowance in Rule 15(c) for inquiry into" such factors.  *Id.* at 203.[8]

## 2.     Whether Amended Complaint Relates Back to Initial Complaint

By the Initial Complaint, Anderson alleged the following pertinent facts as grounds for relief for her causes of action for her mesothelioma injury:

1.     The Plaintiff, BARBARA ANNE ANDERSON, is the

---

[7] We recognize that the Court made this ruling in the context of a habeas corpus proceeding.  We believe the principle applies equally here, as the decision was pertinently predicated upon the subsection of Fed.R.Civ. 15(c) relevant before us.

[8] Plaintiff admitted at oral argument that "[i]n the relation back [analysis] . . . the concept of the statute of limitations [] does not admit prejudice."  (N.T. 7/16/09 at 46).  Plaintiff, citing *Maersk* no less, then puzzlingly asserted that "the formulation in [Fed.R.Civ.P.]15(c)(1)(B) . . . by necessity imports some prejudice analysis."  (N.T. 7/16/09 at 46).  That assertion, of course, contradicts the *Maersk* court's statement directly to the contrary.  *See* 434 F.3d at 203.  Plaintiff appears to improperly conflate factors relevant to a Fed.R.Civ. 15(a) analysis when she implied during oral argument that the amended pleading might somehow relate back to the Initial Complaint under Fed.R.Civ. 15(c) due to the fact that Defendant would not be prejudiced by the proposed amendment.

daughter of Rodney Bailey Mills.  Mr. Mills was a pipe cover insulator at Portsmouth Naval Shipyard in Portsmouth, Virginia for many years beginning in approximately 1947.  As a child, BARBARA ANDERSON lived with her father from 1940 to 1956 and as a result, was exposed to asbestos dust from his asbestos-laden work clothes.

2.      On August 16, 2006, Mrs. Anderson was diagnosed with mesothelioma caused by household exposure to asbestos dust and fibers. . . .

7.      Through her father's employment at Portsmouth Naval Shipyard, Portsmouth, Virginia, as set forth above, Plaintiff was exposed to and inhaled asbestos dust and fibers from her father's asbestos-laden work clothes generated from the ordinary and foreseeable use of asbestos products and/or devices manufactured and/or sold by Defendants, which proximately resulted in the Plaintiff contracting mesothelioma.

. . .

10.      *Plaintiff disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave.*  Plaintiff also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a Defendant committed at the direction of an officer of the United States Government.

. . .

17.      Plaintiff's father was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products in his occupation and as a result, Plaintiff was exposed to asbestos dust and fibers from his asbestos-laden work clothes.

. . .

19.      Plaintiff's father had been exposed, on numerous occasions, to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products produced and/or sold by Manufacturing and Equipment Defendants and, in so doing, had asbestos fibers on his work clothes, which was ultimately carried home where Plaintiff was exposed to his asbestos-laden work clothes.

20.      Further, Plaintiff has suffered injuries proximately caused by her father's exposure to asbestos-containing products designed, manufactured, and sold by the Manufacturing Defendants. In that each exposure to such products caused or contributed to Plaintiff's injuries, the doctrine of joint and several liability should be extended to apply to each Manufacturing Defendant herein.

8

21.     Plaintiff's father was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products that were manufactured, designed and/or distributed by the Manufacturing Defendants and/or their predecessors-in-interest for use as construction materials and/or machinery in industrial operations.   The defective design and condition of the products rendered such products unreasonably dangerous for the use to which they would ordinarily be put or for other reasonably foreseeable purposes; and the asbestos-containing products and/or machinery were in this defective condition at the time they were designed by and/or left the hands of the Manufacturing Defendants.

. . .

26.     During the periods that Plaintiff was exposed to her father's asbestos-laden work clothes from the asbestos-containing products and/or machinery of the Manufacturing Defendants, these asbestos-containing products and/or machinery were being utilized in a manner, which was intended by Manufacturing Defendants.

(Initial Complaint at 5-14) (emphasis in Paragraph 10 added).

By these factual allegations, Plaintiff not only asserted that the household exposure resulting from her father's "asbestos-laden work clothes" was the only means upon which she was predicating her claim against the named Defendants, but also that she was actually "disclaim[ing] any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave."[9]  (Initial Complaint at ¶ 10).  Indeed, upon Defendants' removal of the matter to federal court, Plaintiff sought remand, reiterating that she had "specifically disclaimed any recovery or cause of action for any exposure to asbestos that occurred on a federal enclave" in her "Memorandum in Support of Her Motion for Remand."  (Mem. in Supp. for Remand at 4).

By her proposed Amended Complaint, Anderson seeks to remove the disclaimer language

---

[9] Taking its lead from the parties, the Court notes that the exposure occurring on a "federal enclave" refers to the second phase of exposures described above (*see supra* at § II.), when she worked as an adult at the various military and governmental offices.

9

contained in Paragraph 10 of the Initial Complaint.  She then sets out the following pertinent facts

as grounds for relief for her causes of action:

> 1.      The Plaintiff, BARBARA ANNE ANDERSON, worked as a civil servant in several military and government buildings located in the Virginia Beach and Norfolk areas during the 1960's and 1970's.   Throughout her civil service career, Mrs. Anderson was exposed to dust from asbestos-containing joint compound products during ongoing construction and renovation projects taking place in the office buildings where she worked.

> 2.      On August 16, 2006, Mrs. Anderson was diagnosed with mesothelioma caused by household exposure to asbestos dust an fibers. . . .

> 7.      Through her employment as set forth above, Plaintiff was exposed to and inhaled asbestos dust and fibers generated from the ordinary and foreseeable use of asbestos products and/or fibers manufactured and/or sold by Defendants, which proximately resulted in the Plaintiff contracting mesothelioma.
> . . .

> 17.     Plaintiff was exposed on numerous occasions to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products produced and/or sold by Manufacturing Defendants.
> . . .

> 19.     Plaintiff was exposed to asbestos-containing products requiring or calling for the use of asbestos and/or asbestos-containing products that were manufactured, designed and/or distributed by the Manufacturing Defendants and/or their predecessors-in-interest for use as construction materials in industrial operations.  The defective design and condition of the products rendered such products unreasonably dangerous for the use to which they would ordinarily be put or for other reasonably foreseeable purposes; and the asbestos-containing products were in this defective condition at the time they were designed by and/or left the hands of the Manufacturing Defendants.
> . . .

> 24.     During the periods that Plaintiff was exposed to the asbestos-containing products of the Manufacturing Defendants, these asbestos-containing products were being utilized in a manner, which was intended by Manufacturing Defendants.
> . . .

> 35.     Plaintiff was exposed to asbestos and/or asbestos-

> containing products that were sold, supplied and/or distributed by the
> Supplier Defendants and/or their predecessors-in-interest for use as
> construction materials and/or machinery in industrial operations. The
> defective design and condition of the products rendered such products
> unreasonably dangerous for the use to which they would ordinarily be
> put or for other reasonably foreseeable purposes; and the asbestos-
> containing products and/or machinery were in this defective condition
> at the time they were designed by and/or left the hands of the Supplier
> Defendants.

(Amended Complaint at 2-13).

Defendants assert that the operative facts set out in the proposed Amended Complaint regarding the exposure to asbestos which she alleges caused her mesothelioma differ from the operative facts asserted in the Initial Complaint, and thus do not constitute the same "conduct, transaction or occurrence" as had been earlier asserted. (Doc. 41 at 11). Defendants point to the differences between the two which, by their characterization, are "stark." (Doc. 41 at 11). Defendant argues that the Amended Complaint thus does not relate back to the Initial Complaint, and that the claim asserted would therefore be barred by the Virginia statutes of limitations.

Defendants point out several differences between the circumstances alleged in the two complaints. First, they note that the exposures occurred at different points in time; indeed, decades apart. While the exposures alleged in the Initial Complaint took place between 1940 and 1956, the exposures alleged in the Amended Complaint took place "[t]hroughout her civil service career" which was "during the 1960's and 1970's." (*Compare* Initial Complaint at ¶ 1 *with* Amended Complaint at ¶ 1).

Secondly, the two complaints allege different locations at which the exposures occurred. The exposures alleged in the Initial Complaint occurred at a single site, Plaintiff's childhood home, and came from asbestos-containing products her father brought home from the Portsmouth Naval

11

Shipyard in Portsmouth, Virginia.  On the other hand, the exposures alleged in the Amended Complaint occurred at the multiple office building locations in which Plaintiff worked as an adult, none of which have been identified as being in the Portsmouth Naval Shipyard.[10]  (*Compare* Initial Complaint at ¶ 1 & 7 *with* Amended Complaint at ¶ 1 & 7).

Thirdly, the two complaints allege different factual circumstances as to the causation of her mesothelioma.  While the injury alleged in the Initial Complaint occurred "[t]hrough her father's employment at Portsmouth Naval Shipyard" and specifically as a result of her exposure to and inhalation of "asbestos dust and fibers from her father's asbestos-laden work clothes," the injury alleged in the Amended Complaint occurred through her "civil service career" and specifically as a result of her exposure "to dust from asbestos-containing joint compound products during ongoing construction and renovation projects taking place in the office buildings where she worked." (*Compare* Initial Complaint at ¶ 1, 7, 17, 19, 20, 21 & 26 *with* Amended Complaint at ¶ 1, 7, 19, 35).

Finally, the two complaints allege that different products caused her mesothelioma injury. While the injury alleged in the Initial Complaint resulted from asbestos dust which emanated from "asbestos-containing products and/or machinery" used in her father's occupation as "a pipe cover insulator," the injury alleged in the Amended Complaint resulted from dust emanating from "asbestos-containing joint compound products" which were used "as construction materials in industrial operations."  (*Compare* Initial Complaint at ¶ 1, 17, 19, 20, 21 & 26 *with* Amended Complaint at ¶ 1, 19, 35).

While the general causes of action upon which Plaintiff bases her entitlement to recovery

_____

[10] A copy of Plaintiff's responses to Defendants' interrogatories lists several places of employment, none of which were referred to as being in or a part of the Portsmouth Naval Shipyard.  (*See* Doc. 46-2 at 4-5).

remain the same (e.g. negligence and breach of warranty), the Amended Complaint does not merely

state "with greater particularity or amplify the factual circumstances," contained in the Initial

Complaint.  *Bensel*, 387 F.3d at 310.  Rather, we conclude that it sets out grounds for relief which

are "supported by facts that differ in both time and type from those the original pleading set forth."

*Felix*, 545 U.S. at 650.

Any suggestion to the contrary is belied by Plaintiff's own assertion in her "Memorandum

in Support of Her Motion for Remand":

> Since [Plaintiff has] stipulated that [she] will not pursue any federal
> claims, should any of these . . . alleged injuries be proven at trial to
> have resulted from federal exposure, the fact-finder is precluded from
> considering those injuries and the calculation of damages. . . . Just as
> a plaintiff who stipulates damages in an amount less than $75,000 to
> avoid diversity jurisdiction cannot later claim greater damages in state
> court, [Plaintiff] in the present case cannot now disclaim their federal
> causes of action and later argue damages caused by federal exposure.
> . . .
> [P]laintiff[] in the present case [has] effectively waived [her] federal
> claims now and forever . . . .

(Mem. in Supp. for Remand at 10-11 (quoting *Mangialardi v. Harold's Auto Parts, Inc. et al.*, No.

2:02CV-121-B-B, at 3-4 (N.D. Miss. Nov. 18, 2002)).  While we recognize the different procedural

context in which that assertion was made (*see supra* at § III.), the point stands on its own.  We are

unable to accept that Plaintiff can, on the one hand, make a tactical decision[11] to disclaim any cause

of action for injury which occurred on a federal enclave within her Initial Complaint, confirm that

disclaimer in her memorandum supporting her motion for remand, and then shift course completely

and argue that the cause of action for injury in the federal enclave asserted in the Amended

---

[11] Plaintiff concedes in her motion that the disclaimer was included in the Initial
Complaint "so that this case would not be removed from state court."  (Doc. 33-2 at 3).

Complaint in fact arose out of the same "conduct, transaction, or occurrence set out" in the first.  The argument strains credulity.  We are unable to accept it.

We are likewise unable to accept Plaintiff's argument that the new claim asserted in the proposed Amended Complaint somehow relates back to the claim asserted in the Initial Complaint due to Defendants' having received constructive notice during discovery of the potential that Plaintiff could possibly bring such a claim.  (*See* Doc. 46 at 9-10).  Plaintiff correctly notes that some courts, over time, have viewed the concept of "notice" as a critical element of a relation back analysis.  (*See* Doc. 46 at 9 (and cases cited therein)).  Even those courts, however, note that the pertinent question regarding notice "is whether *the original complaint* gave notice to the defendant of the claim now being asserted," *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) (citing *Woods Exploration & Producing Co., Inc. v. Aluminum Co. of America*, 438 F.2d 1286, 1299-1300 (5th Cir.1971)) (emphasis added), not whether discovery subsequent to the original complaint gave the defendants constructive notice of the claim asserted in the proposed amended pleading.  Likewise, the determination of whether a defendant has received "notice" sufficient to constitute relation back "involves a search for a common core of operative facts *in the two pleadings*," *Bensel*, 387 F.3d at 310 (emphasis added), not a common core of operative facts between the latter pleading and information elicited during discovery taken upon the former.[12]  In other words, the concept of "notice" focuses upon whether the *initial pleading* gave adequate notice that a claim was actually being made against the defendants, not whether those defendants are generally aware of facts that

---

[12] We observe that even the lone case cited by Plaintiff for the suggestion that "other sources" (presumably including discovery) may provide a defendant with the requisite notice of a common core of operative facts, clarifies that the relation back analysis under Fed.R.Civ.P. 15(c) entails a comparison of *the two pleadings*, not a comparison between the latter pleading and facts elicited during discovery.  *Barcume v. City of Flint*, 819 F. Supp. 631, 636 (E.D. Mich. 1993).

might give rise to a claim that might someday be brought against them.  Fed.R.Civ.P. 15(c)(1)(B) obligates the court to determine whether the amended pleading "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading," and precludes a proposed amended pleading "supported by facts that differ in both time and type from those the original pleading set forth" to go forward.  *Felix*, 545 U.S. at 650.  What Defendants may have learned in discovery about some potential exposure for which no claim has been made is not relevant to this analysis.  It does not impact upon our conclusion here.

Even if we accept Plaintiff's assertion that the parties have proceeded since removal as if the claims contained within the Amended Complaint were to be included in Plaintiff's overall case, the inescapable fact remains that they were not.  Indeed, they were specifically, knowingly, and purposefully waived as a strategy to avoid federal jurisdiction, and Plaintiff made no attempt to amend her complaint within the limitation period to have those claims included.  The fact that Defendants had notice of exposure at a very different time and place which might potentially give rise to a claim does not mean that they lost their entitlement to the protections provided by the statutes of limitations.  We conclude that the claims belatedly set out in the Amended Complaint do not "[arise] out of the conduct, transaction, or occurrence set out" in the Initial Complaint, and therefore do not relate back to that Initial Complaint. The Amended Complaint would be barred by the applicable Virginia statutes of limitations, and to allow it to go forward would be futile. Plaintiff's motion is **DENIED**.

An appropriate Order follows.

BY THE COURT:


  /s/ David R. Strawbridge         
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE