VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

BARBARA ANNE ANDERSON,

*Plaintiff,*

vs.

CL06-6790-3

ALFA LAVAL, INC.
A New Jersey Corporation
(sued individually and as successor-in-interest to DELAVAL SEPARATOR COMPANY and SHARPLES, INC.)
SERVE: CT Corporation System
4701 Cox Road, Suite 301
Glen Allen, VA 23060-6802

RECEIVED & ~~FILED~~
CIRCUIT COURT
OCT 26 2006
BEVILL M. DEAN, CLERK
By..........D.C.

BONDEX INTERNATIONAL, INC.
An Ohio Corporation
SERVE: through the Secretary of the Commonwealth
707 Spirit 40 Park Drive
Suite 130
Chesterfield, MO 63005

CBS CORPORATION f/k/a VIACOM INC.
(successor by merger with CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION)
A Delaware Corporation
SERVE: through the Secretary of the Commonwealth
CBS Corporation
1515 Broadway
New York, NY 10036

CRANE CO.
(sued individually and as successor-in-interest to CHAPMAN VALVE CO. and DEMING PUMPS)
A Delaware Corporation
SERVE: CT Corporation System
4701 Cox Road, Suite 301
Glen Allen, VA 23060-6802

Filed in the Clerk's Office this 26 day of October, 2006 10:45 A.M.
Writ Tax $ 25.00
Fee 150.00 5.00
L. A. S. 4.00 1.00
C. H. M. F. 2.00 10.00
Lib. Fee 2.00
Sheriffs Fee 480.00
Total Paid 679.00
Teste: BEVILL M. DEAN, CLERK
Catherine White D.C.



EXHIBIT 1

FOSTER WHEELER ENERGY CORPORATION
A Delaware Corporation
SERVE: CT Corporation System
4701 Cox Road, Suite 301
Glen Allen, VA 23060-6802

GARLOCK, INC.
A Delaware Corporation
SERVE: CT Corporation System
4701 Cox Road, Suite 301
Glen Allen, VA 23060-6802

GARLOCK SEALING TECHNOLOGIES, LLC
(sued individually and as successor-in-interest to GARLOCK, INC.)
A Delaware Corporation
SERVE: CT Corporation System
4701 Cox Road, Suite 301
Glen Allen, VA 23060-6802

GENERAL ELECTRIC COMPANY
A New York Corporation
SERVE: Allen C. Goolsby III
Hunton & Williams
Riverfront Plaza East Tower
951 E. Byrd Street
Richmond, VA 23219-4074

GEORGIA-PACIFIC CORPORATION
(sued individually and as successor-in-interest to BESTWALL GYPSUM COMPANY)
A Georgia Corporation
SERVE: CT Corporation System
4701 Cox Road, Suite 301
Glen Allen, VA 23060-6802

IMO INDUSTRIES
(sued individually and as successor-in-interest to DeLAVAL STEAM TURBINE CO.)
A Delaware Corporation
SERVE: Corporation Service Company
11 S. 12th Street
P.O. Box 1463
Richmond, VA 23218

INGERSOLL-RAND COMPANY
(sued individually and as successor-in-interest
TERRY STEAM TURBINE COMPANY)
A New Jersey Corporation
SERVE: CT Corporation System
4701 Cox Road, Suite 301
Glen Allen, VA 23060-6802

OWENS-ILLINOIS, INC.
(sued individually and as successor-in-interest to
OWENS-ILLINOIS GLASS COMPANY)
A Delaware Corporation
SERVE: through the Secretary of the Commonwealth
Owens-Illinois, Inc.
Fiberglass Tower, One Seagate
Toledo, OH 43666

PHILIPS ELECTRONICS NORTH AMERICA CORPORATION
(sued individually and as successor-in-interest to
and as alter-ego to THOMPSON-HAYWARD
CHEMICAL CO.)
A Delaware Corporation
SERVE: Corporation Service Company
11 S. 12th Street
P.O. Box 1463
Richmond, VA 23218

RPM, INC.
(sued individually and as successor-in-interest to
BONDEX INTERNATIONAL, INC.)
A Delaware Corporation
SERVE: through the Secretary of the Commonwealth
RPM, Inc.
2628 Pearl Road
Medina, OH 44258

RPM INTERNATIONAL, INC.
(sued individually and as successor-in-interest to
RPM, INC.)
A Delaware Corporation
SERVE: through the Secretary of the Commonwealth
RPM International, Inc.
2628 Pearl Road
Medina, OH 44258

T H AGRICULTURE & NUTRITION, LLC
(sued individually and as successor-in-interest to
THOMPSON-HAYWARD CHEMICAL CO.)
A Delaware Corporation
SERVE: through the Secretary of the Commonwealth
T H Agriculture & Nutrition, LLC
C/O PHILIPS ELECTRONICS NORTH AMERICA CORP.
1251 Avenue of the Americas
New York, NY 10020

TYCO INTERNATIONAL (US), INC.
(sued individually and as successor-in interest to
YARWAY CORPORATION)
A Massachusetts Corporation
SERVE: CT Corporation System
4701 Cox Rd., Suite 301
Glen Allen, VA 23060-6802

TYCO VALVES & CONTROLS, INC.
(sued individually and as successor-in-interest to
YARWAY CORPORATION)
A Texas Corporation
SERVE: through the Secretary of the Commonwealth
Tyco International (US), Inc.
9 Roszel Road
Princeton, NJ 08540

UNION CARBIDE CORPORATION
A New York Corporation
SERVE: CT Corporation System
4701 Cox Road, Suite 301
Glen Allen, VA 23060-6802

YARWAY CORPORATION
(sued individually and as successor-in-interest to
YARNALL WARING CO.)
A Delaware Corporation
SERVE: CT Corporation System
1515 Market Street, Suite 1210
Philadelphia, PA 19102

*Defendants.*

**COMPLAINT**

COMES NOW PLAINTIFF, BARBARA ANNE ANDERSON, and as and for her Complaint pleads as follows:

1. The Plaintiff, BARBARA ANNE ANDERSON, is the daughter of Rodney Bailey Mills. Mr. Mills was a pipe cover insulator at Portsmouth Naval Shipyard in Portsmouth, Virginia for many years beginning in approximately 1947. As a child, BARBARA ANDERSON lived with her father from 1940 to 1956 and as a result, was exposed to asbestos dust and fibers from his asbestos-laden work clothes.

2. On August 16, 2006, Mrs. Anderson was diagnosed with mesothelioma caused by household exposure to asbestos dust and fibers. The Defendants are corporations, companies or other business entities which, during all times material hereto, and for a long time prior thereto, have been, and/or are now engaged, directly or indirectly, in the manufacturing, producing, selling, merchandising, supplying, distributing, and/or otherwise placing in the stream of commerce, asbestos products and/or products whose sole purpose is to cut, score or grind asbestos-containing products.

3. Jurisdiction over Defendants is proper in this Court, as Defendants have either (i) committed tortious acts in the Commonwealth of Virginia or (ii) have committed tortious acts outside the Commonwealth of Virginia that have resulted in injury within the Commonwealth of Virginia, and regularly do or solicit business, engage in a persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in the Commonwealth. Moreover, all Defendants have caused injury in this Commonwealth to Plaintiff by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth and should reasonably have expected persons such as Plaintiff to use, consume, or be affected by the goods in this Commonwealth, while regularly doing or soliciting business, engaging in any other persistent course of conduct, or deriving substantial revenue from goods used or consumed or services rendered in this Commonwealth.

4. Venue is proper in this Court, as the cause of action, or part of it, arose in the City of Richmond.

5. At all times material hereto, Defendants acted through their agents, servants or employees who were acting within the scope of their employment on the business of the Defendants.

6. At all times material hereto:

(a) Defendant ALFA LAVAL, INC. (sued individually and as successor-in-interest to DeLAVAL SEPARATOR COMPANY and SHARPLES, INC.) may be served with process through its registered agent, CT Corporation System, 4701 Cox Road, Suite 301, Glen Allen, Virginia 23060-6802.

(b) Defendant BONDEX INTERNATIONAL, INC. may be served with process through the Secretary of the Commonwealth at its principal place of business, 707 Spirit 40 Park Drive, Suite 130, Chesterfield, Missouri 63005.

(c) Defendant CBS CORPORATION f/k/a VIACOM, INC. (successor by merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION) may be served with process through the Secretary of the Commonwealth at its principal place of business at 1515 Broadway, New York, New York 10036.

(d) Defendant CRANE CO. (sued individually and as successor-in-interest to CHAPMAN VALVE CO. and DEMING PUMPS) may be served with process through its registered agent, CT Corporation System, 4701 Cox Road, Suite 301, Glen Allen, Virginia 23060-6802.

(e) Defendant FOSTER WHEELER ENERGY CORPORATION may be served with process through its registered agent, CT Corporation System, 4701 Cox Road, Suite 301, Glen Allen, Virginia 23060-6802.

(f) Defendant GARLOCK, INC., may be served with process through its registered agent, CT Corporation System, 4701 Cox Road, Suite 301, Glen Allen, Virginia 23060-6802.

(g) Defendant GARLOCK SEALING TECHNOLOGIES, LLC (sued individually and as successor-in-interest to GARLOCK INC.) may be served with process through its registered agent, CT Corporation System, 4701 Cox Road, Suite 301, Glen Allen, Virginia 23060-6802.

(h) Defendant GENERAL ELECTRIC COMPANY may be served with process through its registered agent, Allen C. Goolsby II, Hunton & Williams, Riverfront Plaza East Tower, 951 E. Byrd Street, Richmond, Virginia 23219-4074.

(i) Defendant GEORGIA-PACIFIC CORPORATION (sued individually and as successor-in-interest to BESTWALL GYPSUM COMPANY) may be served with process through its registered agent, CT Corporation System, 4701 Cox Road, Suite 301, Glen Allen, VA 23060-6802.

(j) Defendant IMO INDUSTRIES, INC. (sued individually and as successor-in-interest to DeLAVAL STEAM TURBINE COMPANY) may be served with process through its registered agent, Corporation Service Company, 11 S. 12th Street, P.O. Box 1463, Richmond, VA 23218.

(k) Defendant INGERSOLL-RAND COMPANY (sued individually and as successor-in-interest to TERRY STEAM TURBINE COMPANY) may be served with process through its registered agent, CT Corporation System, 4701 Cox Road, Suite 301, Glen Allen, Virginia 23060-6802.

(l) Defendant OWENS-ILLINOIS, INC. (sued individually and as successor-in-interest to OWENS-ILLINOIS GLASS COMPANY) may be served through the Secretary of the Commonwealth at its principal place of business, Fiberglass Tower, One Seagate, Toledo, Ohio 43666.

(m) Defendant PHILIPS ELECTRONICS NORTH AMERICA CORPORATION (sued individually and as successor-in-interest to and as alter-ego to THOMPSON-HAYWARD CHEMICAL CO.) may be served with process through the Secretary of the Commonwealth, c/o PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, 1251 Avenue of the Americas, New York, NY 10020.

(n) Defendant RPM, INC. (sued individually and as successor-in-interest to BONDEX INTERNATIONAL, INC.) may be served with process through the Secretary of the Commonwealth at its principal place of business, 2628 Pearl Road, Medina, OH 44258.

(o) Defendant RPM INTERNATIONAL, INC. (sued individually and as successor-in-interest to RPM, INC.) may be served with process through the Secretary of the Commonwealth at its principal place of business, 2628 Pearl Road, Medina, OH 44258.

(p) Defendant T H AGRICULTURE & NUTRITION, LLC (sued individually and as successor-in-interest to THOMPSON-HAYWARD CHEMICAL CO.) may be served with process through the Secretary of the Commonwealth at its principal place of business, c/o PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, 2628 Pearl Road, Medina, OH 44258.

(q) Defendant TYCO INTERNATIONAL (US), INC. (sued individually and as successor-in-interest to YARWAY CORPORATION) may be served with process through its registered agent, CT Corporation System, 4701 Cox Rd., Suite 301, Glen Allen, Virginia 23060-6802.

(r) Defendant TYCO VALVES & CONTROLS, INC. (sued individually and as successor-in-interest to YARWAY CORPORATION) may be served through the Secretary of the Commonwealth at its principal place of business, 9 Roszel Road, Princeton, New Jersey 08540.

(s) Defendant UNION CARBIDE CORPORATION may be served with process by serving its registered agent, CT Corporation System, 4701 Cox Road, Suite 301, Glen Allen, VA 23060-6802.

(t) Defendant YARWAY CORPORATION (sued individually and as successor-in-interest to YARNALL WARING CO.) may be served with process through the Secretary of the Commonwealth at CT Corporation System, 1515 Market Street, Suite 1210, Philadelphia, Pennsylvania 19102.

7. Through her father's employment at Portsmouth Naval Shipyard, Portsmouth, Virginia, as set forth above, Plaintiff was exposed to and inhaled asbestos dust and fibers from her father's asbestos-laden work clothes generated from the ordinary and foreseeable use of asbestos products and/or devices manufactured and/or sold by Defendants, which proximately resulted in the Plaintiff contracting mesothelioma.

## COUNT ONE
## NEGLIGENCE AGAINST MANUFACTURING AND EQUIPMENT DEFENDANTS

8. All of the allegations contained in the previous paragraphs are re-alleged.

9. The illness and disabilities of Plaintiff are a direct and proximate result of the negligence of each Defendant and/or their predecessors-in-interest in that said entities produced, designed, sold and/or otherwise put into the stream of commerce, asbestos, asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Plaintiff's health and well-being. Certain Defendants, BONDEX INTERNATIONAL, INC., GARLOCK, INC., GARLOCK SEALING TECHNOLOGIES, GEORGIA-PACIFIC CORPORATION, IMO INDUSTRIES, INC., OWENS-ILLINOIS, INC., RPM, INC., and RPM INTERNATIONAL, INC., created hazardous and deadly conditions to which Plaintiff was exposed and which caused Plaintiff to be exposed to a large amount of asbestos fibers. The Defendants were negligent in one, some and/or all of the following respects, among others, being the proximate cause of Plaintiff's illness and disabilities:

(a) in failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(b) in failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect Plaintiff from being harmed and disabled by exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(c) in failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, or on the asbestos-containing products themselves, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and/or machinery;

(d) in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and installing asbestos and/or asbestos-containing products, or utilizing the machinery requiring or calling for the use of asbestos and/or asbestos-containing products in a safe manner;

(e) in failing to develop and utilize a substitute material or design to eliminate asbestos fibers in the asbestos-containing products, and/or the machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(f) in failing to properly design and manufacture asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g) in failing to properly test said asbestos-containing products or machinery before they were released for consumer use; and

(h) in failing to recall and/or remove from the stream of commerce said asbestos-containing products or machinery or machinery requiring or calling for the use of

asbestos and/or asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products or machinery.

10. Plaintiff disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Plaintiff also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a Defendant committed at the direction of an officer of the United States Government.

11. Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves and with other entities to cause Plaintiff's injuries, diseases, and illnesses by exposing Plaintiff to harmful and dangerous asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products. Defendants and other entities further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products or to expose themselves to said dangers. Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

12. For many decades, Defendants, individually, jointly, and in conspiracy with each other and other entities, have been in possession of medical and scientific data, literature and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly.

13. Despite the medical and scientific data, literature and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other and other entities, fraudulently, willfully, and maliciously:

a) withheld, concealed and suppressed said medical and scientific data, literature and test reports regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases from Plaintiff who was using and being exposed to Defendants'

asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

b) caused to be released, published and disseminated medical and scientific data, literature and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases, which Defendants knew were incorrect, incomplete, outdated and misleading; and

c) distorted the results of medical examinations conducted upon Plaintiff and workers such as Plaintiff who were using asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and being exposed to the inhalation of asbestos dust and fibers by falsely stating and/or concealing the nature and extent of the harm to which Plaintiff and workers such as Plaintiff have suffered.

d) Other conspirators participating in the conspiracy, or in ongoing or subsequent conspiracies were (hereinafter called the "conspirators"), were member companies in the Quebec Asbestos Mining Association and/or Asbestos Textile Institute and/or the Industrial Hygiene Foundation. Acting in concert, the conspirators fraudulently misrepresented to the public and public officials, *inter alia*, that asbestos did not cause cancer and that the disease asbestosis had no association with pleural and pulmonary cancer and affirmatively suppressed information concerning the carcinogenic and other adverse effects of asbestos exposure on the human respiratory and digestive systems.

e) In addition, Defendants contrived, combined, confederated and conspired through a series of industry trade meetings and the creation of organizations such as the Air Hygiene Foundation (later the Industrial Hygiene Foundation) to establish authoritative standards for the control of industrial dusts which would act as a defense in personal injury lawsuits, despite knowing that compliance with such standards would not protect workers such as Plaintiff from contracting asbestos disease or cancer.

f) In furtherance of said conspiracies, Defendants and/or their co-conspirators contributed to cause the establishment of a Threshold Limit Value for asbestos

exposure, and contributed to the maintenance of such Threshold Limit Value despite evidence that this supposed "safe" level of exposure to asbestos would not protect the health of workers such as Plaintiff even if complied with.

g) As the direct and proximate result of the false and fraudulent representations, omissions and concealments set forth above, Defendants, individually, jointly, and in conspiracy with each other, intended to induce the Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, to continue to expose themselves to the dangers inherent in the use of and exposure to Defendants' asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers.

14. These actions constitute malicious conduct and demonstrate negligence so willful and wanton as to evince a conscious disregard of the rights of Plaintiff and other persons who would come into contact with their products, or reckless indifference to the consequences despite the awareness of the defendants that their conduct would cause injury to another. As such, these acts constitute willful and wanton negligence on the part of the Defendants.

15. In the event that Plaintiff is unable to identify each injurious exposure to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products, the Manufacturing and Equipment Defendants named herein represent and/or represented a substantial share of the relevant market of asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products at all times material to the cause of action. Consequently, each Manufacturing and Equipment Defendant should be held jointly and severally liable under the doctrines of enterprise liability, market-share liability, concert of action and alternative liability, among others.

**COUNT TWO**
**BREACH OF WARRANTY AGAINST MANUFACTURING DEFENDANTS**

16. Defendants BONDEX INTERNATIONAL, INC., GARLOCK, INC., GARLOCK SEALING TECHNOLOGIES, LLC, GEORGIA-PACIFIC CORPORATION, OWENS-ILLINOIS, INC., RPM, INC., and RPM INTERNATIONAL, INC. are hereafter referred to collectively as the "Manufacturing Defendants."

17. Plaintiff's father was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products in his occupation and as a result, Plaintiff was exposed to asbestos dust and fibers from his asbestos-laden work clothes.

18. Each Manufacturing and Equipment Defendant or its predecessor-in-interest, is, or at times material hereto, has been engaged in the mining, processing and/or manufacturing, sale and distribution of asbestos and asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

19. Plaintiff's father had been exposed, on numerous occasions, to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products produced and/or sold by Manufacturing and Equipment Defendants and, in so doing, had asbestos fibers on his work clothes, which was ultimately carried home where Plaintiff was exposed to his asbestos-laden work clothes.

20. Further, Plaintiff has suffered injuries proximately caused by her father's exposure to asbestos-containing products designed, manufactured, and sold by the Manufacturing Defendants. In that each exposure to such products caused or contributed to Plaintiff's injuries, the doctrine of joint and several liability should be extended to apply to each Manufacturing Defendant herein.

21. Plaintiff's father was exposed to asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products that were manufactured, designed and/or distributed by the Manufacturing Defendants and/or their predecessors-in-interest for use as construction materials and/or machinery in industrial operations. The defective design and condition of the products rendered such products unreasonably dangerous for the use to which they would ordinarily be put or for other reasonably foreseeable purposes; and the asbestos-containing products and/or machinery were in this defective condition at the time they were designed by and/or left the hands of the Manufacturing Defendants.

22. The Manufacturing Defendants' asbestos-containing products and/or machinery requiring or calling for the use of asbestos-containing products were defective in the manner in which they were marketed for their failure to contain or include warnings regarding potential asbestos health hazards associated with the use of or the exposure to the products. This market defect rendered such products and/or machinery requiring or calling for the use of asbestos-containing products unreasonably dangerous at the time they were designed or left the hands of the Manufacturing Defendants, and the Manufacturing Defendants are liable in breach of warranty for the above-described defects, including breach of the warranty of fitness for a particular purpose and breach of the implied warranty of merchantability.

23. The Manufacturing Defendants are or were engaged in the business of selling, manufacturing, producing, designing and/or otherwise putting into the stream of commerce asbestos-containing products and/or machinery requiring or calling for asbestos or asbestos-containing products, and these asbestos-containing products and/or machinery, without substantial change in the condition in which they were sold, manufactured, produced, designed and/or otherwise put into the stream of commerce were a proximate and/or producing cause of the injuries of Plaintiff.

24. The Manufacturing Defendants knew that these asbestos-containing products and/or machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation and/or installation of the asbestos-containing products and/or operation, maintenance and/or repair of the machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

25. Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the Manufacturing Defendants, which made them unsafe for purposes of manipulation and/or installation. Similarly, Plaintiff was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

26. During the periods that Plaintiff was exposed to her father's asbestos-laden work clothes from the asbestos-containing products and/or machinery of the Manufacturing Defendants, these asbestos-containing products and/or machinery were being utilized in a manner, which was intended by Manufacturing Defendants.

27. Plaintiff's injuries were a direct result of the breach of such warranties by the Manufacturing Defendants.

**COUNT THREE**
**ALLEGATIONS AGAINST NAVAL EQUIPMENT MANUFACTURERS**

28. All of the allegations contained in the previous paragraphs are re-alleged.

29. Defendants ALFA LAVAL, INC., CBS CORPORATION, CRANE CO., FOSTER WHEELER ENERGY CORPORATION, GENERAL ELECTRIC COMPANY, IMO INDUSTRIES, INC., INGERSOLL-RAND COMPANY, TYCO INTERNATIONAL (U.S.), INC., TYCO VALVES & CONTROLS, INC., and YARWAY CORPORATION, are hereinafter referred to as the Naval Equipment Manufacturers. The Naval Equipment Manufacturers are sued only for their failure to warn of the hazards of asbestos exposure and are not being sued on any other theory. This failure to warn renders the Naval Equipment Manufacturers liable in both negligence and in strict products liability for a marketing defect. Any and all theories alleged against any and all Defendants other than the above-named Naval Equipment Manufacturers are expressly not alleged against the Naval Equipment Manufacturers.

30. In particular, the Naval Equipment Manufacturers were negligent in one or both of the following ways, these being proximate causes of Plaintiff's illnesses and disabilities:

(a) in failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos, asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products;

(b) in failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, or on the asbestos-containing products themselves, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products to warn of the dangers to health of coming into contact with said asbestos-containing products and/or machinery;

31. Plaintiff would also show that the Naval Equipment Manufacturers' asbestos-containing products and/or machinery requiring or calling for the use of asbestos-containing products were defective in the manner in which they were marketed for their failure to contain or include warnings regarding potential asbestos health hazards associated with the use of or the exposure to the

products. Plaintiff would show that this marketing defect rendered such products and/or machinery requiring or calling for the use of asbestos-containing products unreasonably dangerous at the time they were designed or left the hands of the Naval Equipment Manufacturers. Plaintiff would show that Defendants are liable in strict product liability for this marketing defect.

32. The Naval Equipment Manufacturers are or were engaged in the business of selling, manufacturing, producing, designing and/or otherwise putting into the stream of commerce asbestos-containing products and/or machinery requiring or calling for asbestos or asbestos-containing products, and these asbestos-containing products and/or machinery, without substantial change in the condition in which they were sold, manufactured, produced, designed and/or otherwise put into the stream of commerce were a proximate and/or producing cause of the injuries of Plaintiff.

33. The Naval Equipment Manufacturers knew that these asbestos-containing products and/or machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation and/or installation of the asbestos-containing products and/or operation, maintenance and/or repair of the machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

34. Plaintiff was unaware of the hazards and defects in the asbestos-containing products of the Naval Equipment Manufacturers, which made them unsafe for purposes of manipulation and/or installation. Similarly, Plaintiff was unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

35. During the periods that Plaintiff was exposed to the asbestos-containing products and/or machinery of the Naval Equipment Manufacturers, these asbestos-containing products and/or machinery were being utilized in a manner, which was intended by the Naval Equipment Manufacturers.

## DAMAGES

36. The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from asbestos-related lung disease of Plaintiff and of the following general and special damages including:

(a) Damages to punish Defendants for proximately causing Plaintiff's untimely injuries and illness;

(b) Damages to punish Defendants for proximately causing Plaintiff's untimely injuries and illness;

(c) The conscious physical pain and suffering and mental anguish sustained by Plaintiff;

(d) The physical impairment suffered by Plaintiff;

(e) The disfigurement suffered by Plaintiff;

(f) Reasonable and necessary medical expenses incurred by Plaintiff;

(g) Plaintiff's lost earnings and net accumulations; and

(h) Punitive and exemplary damages.

WHEREFORE, Plaintiff prays for judgment against the Defendants, individually and jointly and severally, for compensatory damages in the sum of SIX MILLION, FIVE HUNDRED THOUSAND DOLLARS ($6,500,000.00), and punitive damages in the amount of THREE HUNDRED AND FIFTY THOUSAND DOLLARS ($350,000.00), together with interest, the costs of this suit and such other and further relief as to the Court seems proper.

Respectfully submitted,

BARBARA ANNE ANDERSON
By Counsel

WATERS & KRAUS, LLP

By______________________
**PETER A. KRAUS**, Esquire
VSB 25547
**WATERS & KRAUS, LLP**
3219 McKinney Avenue
Dallas, TX 75204
(214) 357-6244
(214) 357-7252 (fax)

PLAINTIFF DEMANDS A JURY WITH RESPECT TO ALL ISSUES TO WHICH SHE IS ENTITLED BY LAW TO A JURY.